## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Kristine Curcio,                          :
    Plaintiff,                       :
                                       :
v.                                        :        Case No. 3:06cv1630 (JBA)
                                       :
Hartford Financial Services Group         :
and David Bedard,                         :
    Defendants.                      :

### RULING ON PLAINTIFF'S MOTION TO REMAND [DOC. # 14]

Plaintiff Kristine Curcio instituted this suit in Connecticut Superior Court against her former employer Hartford Financial Services Group ("Hartford") and Hartford Chief Financial Officer David Bedard alleging breach of her employment contract, tortious interference, intentional infliction of emotional distress, negligent misrepresentation, and quantum meruit.  See Compl. [Doc. # 1].[1]  Defendants subsequently removed the action to federal court pursuant to 28 U.S.C. § 1441(b) on the basis that plaintiff's quantum meruit claim is completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 101-1461, and therefore raises a federal question under 28 U.S.C. § 1331 as the claim concerns alleged failure to pay severance benefits and the Hartford's severance plan is governed by ERISA.  See Pet. for Removal [Doc. # 1].

---

[1] Plaintiff has another action against defendants already pending in this Court, 06cv908 (JBA), alleging Title VII violations including discrimination on the basis of her gender and marital status.

Plaintiff now moves for remand pursuant to 28 U.S.C. § 1447(c) contending that her quantum meruit claim states a state law cause of action only as she is "not seeking to recover benefits due under the plan, to enforce her rights under the plan, or to clarify her rights under the plan," and thus ERISA does not preempt the claim.  Pl. Mot./Mem. for Remand [Doc. # 14] at 4. For the reasons that follow, plaintiff's motion will be denied.

## I.   Plaintiff's Complaint

Plaintiff details in her Complaint her employment history at Hartford, beginning in 1988 and continuing until her discharge in December 2004.  In 2002 plaintiff was promoted to Vice President of the Investments Products Division ("IPD") of defendant's Hartford Life Division, the position she held until her discharge, and reported to Hartford Life's Chief Financial Officer David Foy.  Compl. ¶ 5.  In 2003, Mr. Foy decided to leave the company and plaintiff, who was happy with her job, preferred not to assume his position; however, she was concerned about alteration of the work environment by the addition of a replacement for Mr. Foy.  Id. ¶ 6.  Plaintiff alleges that before Foy left, he and John Walters, Executive Vice President, "promised her that whoever replaced Mr. Foy would continue to let her run her organization as she had been, and that no changes would be made to the culture of the organization."  Id.  When Mr. Foy left the company, plaintiff was named "Interim Chief

Financial Officer of IPD and assumed Mr. Foy's duties in addition to her own." <u>Id</u>. ¶ 7.  She and Mr. Walters interviewed replacement candidates but "ultimately, without [plaintiff's] endorsement, Mr. Walters named Mr. David Bedard, who had been CFO of the Company's Group Benefits Division, as Chief Financial Officer." <u>Id</u>.

In 2003, plaintiff was injured in a car accident and also separated from her husband, divorcing him in 2004 and obtaining custody over her young children. <u>Id</u>. ¶ 8.  Thereafter, "[p]laintiff assumed a flexible schedule, working at the office and at home." <u>Id</u>. ¶ 9.  Plaintiff alleges that Mr. Bedard disapproved of plaintiff's flexible schedule and that their relationship became "strained." <u>Id</u>. ¶ 10.  In November 2004, "Mr. Bedard told [p]laintiff he could not work with her and told her she should look for another job," "[o]n December 7, 2004, [p]laintiff was told that she could not enter the building without meeting with Mr. Bedard," and "[o]n December 9, 2004, [she] was informed that she no longer had a position with the Company." <u>Id</u>. ¶¶ 11-12.

Thus, plaintiff alleges breach of her express and implied contract of employment (Count 1), two counts of tortious interference against Bedard (Counts 2-3), a claim of intentional infliction of emotional distress (Count 4), negligent misrepresentation (Count 5), and the quantum meruit claim that is

the focus of this Ruling (Count 6).  Plaintiff's quantum meruit claim alleges that "[a]s a result of her years of service and position with the Company the [p]laintiff had accumulated credits toward severance benefits from the Company, including Notice Pay, Transition Allowance and severance pay.  The Company has failed or refused to make these payments to [p]laintiff.  It is contrary to equity and fairness to permit the Defendant Company to retain these benefits at the expense of the [p]laintiff.  The Defendant Company would be unjustly enriched should it be permitted to retain these benefits."  Id. at Count 6 ¶ 14.  Plaintiff further claims she has "sustained as damages the amounts by which the Defendant Company has retained these benefits, which represent a reasonable sum for Plaintiff's past services."  Id. ¶ 15.

## II.  Standard

Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  In the absence of diversity of citizenship, the district court has original jurisdiction only if the case "arises under" federal law, pursuant to 28 U.S.C. § 1331.  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  The burden of establishing the existence of federal subject matter jurisdiction

4

rests on the removing party.  <u>United Mutual Houses, L.P. v. Andujar</u>, 230 F. Supp. 2d 349 (S.D.N.Y. 2002) (citing <u>Caterpillar</u>, 482 U.S. at 391-92).

"The present or absence of federal-question jurisdiction [under § 1331] is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Caterpillar</u>, 482 U.S. at 392. Thus, "[t]he 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts." <u>Metropolitan Life Ins. Co. v. General Motors Corp.</u>, 481 U.S. 58, 63 (1987).  This rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  <u>Id</u>.

The Supreme Court has held that "federal pre-emption is ordinarily a federal defense to the plaintiff's suit.  As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." <u>Id</u>.  However, one "corollary" of the well-pleaded complaint rule is the "complete pre-emption doctrine," which holds that certain statutes have such extraordinary preemptive force that "any civil complaint raising this select group of claims is necessarily federal in character.  <u>Id</u>. at 63-64; <u>Caterpillar</u>, 482 U.S. 393.  Thus, "[w]hen a federal statute

5

wholly displaces the state-law cause of action through complete
pre-emption, the state claim can be removed. . . . This is so
because when the federal statute completely preempts the state-
law cause of action, a claim which comes within the scope of that
cause of action, even if pleaded in terms of state law, is in
reality based on federal law.  ERISA is one of these statutes."
Aetna Health Inc. v. Davila, 542 U.S. 200, 207-08 (2004)
(internal citations omitted).

     Specifically, "[t]he purpose of ERISA is to provide a
uniform regulatory regime over employee benefit plans" and "[t]o
this end, ERISA includes expansive pre-emption provisions"
(citing § 514, 29 U.S.C. § 1144) and "includes an integrated
system of procedures for enforcement . . . [t]he detailed
provisions of § 502(a) [(29 U.S.C. § 1132(a)] set forth a
comprehensive civil enforcement scheme . . ."  Id. at 208.
"Therefore, any state-law cause of action that duplicates,
supplements, or supplants the ERISA civil enforcement remedy
conflicts with the clear congressional intent to make the ERISA
remedy exclusive and is therefore pre-empted" and "the ERISA
civil enforcement mechanism [§ 502(a)] is one of those provisions
with such extraordinary preemptive power that it converts an
ordinary state common law complaint into one stating a federal
claim for purposes of the well-pleaded complaint rule. . . .
Hence, causes of action within the scope of the civil enforcement

provisions of § 502(a) are removable to federal court."  Id. at
209 (internal quotations omitted).

ERISA § 502(a) provides in relevant part:

A civil action may be brought – (1) by a participant or
beneficiary – . . . (B) to recover benefits due to him
under the terms of his plan, to enforce his rights
under the terms of the plan, or to clarify his rights
to future benefits under the terms of the plan.

29 U.S.C. § 1132(a).  "[I]f an individual, at some point in time,
could have brought his claim under ERISA § 502(a)(1)(B), and
where there is no other independent legal duty that is implicated
by a defendant's actions, then the individual's cause of action
is completely pre-empted by ERISA § 502(a)(1)(B)."  Davila, 542
U.S. at 210 (finding claims "to rectify a wrongful denial of
benefits promised under ERISA-regulated plans" which "d[id] not
attempt to remedy any violation of a legal duty independent of
ERISA" to be completely preempted by § 502 and removable to
federal court); accord Cicio v. Does, 385 F.3d 156 (2d Cir.
2004).  Thus, under Davila, the Court first must determine
whether plaintiff "at some point in time, could have brought
[her] claim under ERISA § 502(a)(1)(B)" and if so, whether any
"independent legal duty is implicated by [defendants'] actions,"
542 U.S. at 210, and "[i]f the alleged liability is derived from
or dependent upon the existence and administration of an ERISA-
regulated benefit plan, then the state-law claims are not
'entirely independent of the federally regulated contract

7

itself,' and are therefore preempted." <u>Radcliff v. El Paso</u>
<u>Corp.</u>, 377 F. Supp. 2d 558, 563-64 (S.D. W. Va. 2005) (quoting
<u>Davila</u>, 542 U.S. at 213).

## III. Discussion

Plaintiff contends that her quantum meruit claim "uses the
benefits under Defendant The Hartford's severance plan as a
measure of damages, and is not a claim for actual severance
benefits" and thus argues that as she "is not seeking to recover
benefits due under the plan, to enforce her rights under the
plan, or to clarify her rights under the plan, then ERISA does
not preempt."  Pl. Mem. at 4, 6.  Plaintiff claims that the "one
time damages payment" she seeks "would not require the
administration of any benefits and would not trigger the
preemptive effect of ERISA.  The amount of severance benefits
Plaintiff would have received are sought as damages for
Defendants' wrongful conduct, and is not a separate claim arising
under an ERISA plan."  <u>Id</u>. at 6-7. Defendants respond that
"[a]lthough cast as a state law claim, Count Six of Plaintiff's
Complaint is without question an action to enforce her rights
under the terms of The Hartford's severance plan and to recover
benefits under that plan.  Plaintiff's claim falls squarely
within the scope of ERISA's civil enforcement provisions" and
they argue that plaintiff's characterization of her claim as
"us[ing] the benefits under Defendant The Hartford's severance

plan as a measure of damages, and not as a claim for actual
severance benefits" "is nothing more than an attempt to do an end
run around ERISA's applicability."  Def. Opp. Mem. [Doc. # 21] at
4, 8.

Considering the first <u>Davila</u> factor of whether plaintiff
could have brought her claim under ERISA § 502(a), the Court
finds that she could have.  Although framed as damages recovery
related to her breach of contract and other related claims ("It
is contrary to equity and fairness to permit the Defendant
Company to retain these benefits at the expense of the
Plaintiff," Compl. at Count 6 ¶ 14), plaintiff's quantum meruit
claim unequivocally seeks severance benefits under Hartford's
Executive Severance Pay Plan II, a plan governed by ERISA.  <u>See</u>
Severance Plan [Doc. # 21-2].[2]  As plaintiff is a plan
"participant or beneficiary," pursuant to ERISA § 502(a), 29
U.S.C. 1132(a), she could have brought an ERISA civil enforcement
action "to recover benefits due to [her] under the terms of [her]
plan."

Next, considering the second <u>Davila</u> factor of whether any
legal duty independent of ERISA is implicated by defendants'

---

[2] Plaintiff does not dispute that Hartford's severance plan
is governed by ERISA, but rather whether her claim can be
characterized as one seeking benefits under that plan.  <u>See</u> Pl.
Reply [Doc. # 23] at 2 ("At issue in Plaintiff's Motion for
Remand is not whether Defendant The Hartford's severance plan is
an ERISA plan, but, whether Plaintiff is seeking benefits under
that plan.").

actions, it also seems clear that "the alleged liability is
derived from or dependent upon the existence and administration
of [Hartford's] ERISA-regulated benefit plan," and thus that
plaintiff's quantum meruit claim is "not entirely independent of
the federally regulated contract itself, and [is] therefore
preempted." Davila, 542 U.S. at 210; Radcliff, 377 F. Supp. at
563-64 (quoting Davila, 542 U.S. at 213). Plaintiff's
characterization of Count 6 as just using Hartford's severance
plan benefits as a measure of her damages is circular – the
amount of those benefits is not an accurate measure of damages
for her claims unless she was in fact entitled to those benefits
under the Plan. Thus, her claim for damages is grounded in the
existence of the ERISA-regulated plan providing for severance
benefits in certain circumstances.[3] This is true regardless of
whether she seeks her damages in the form of a single lump-sum
payment or in the form of benefits paid out over a period of

---

[3] Hartford's severance plan places limits on the payment of
severance benefits, including, inter alia, that benefits will not
be paid to a terminated employee if the employee "terminates
voluntarily," is fired "for misconduct or other disciplinary
action" or "poor performance," if the employee "accepts or
refuses an offer for a comparable position," or "if an employee
is terminated after exhausting job protection under applicable
leave laws and policies." Severance Plan at 4-5. Consideration
of this provision illustrates that plaintiff's claim is dependent
on the ERISA-governed plan, as severance benefits under the Plan
would not be an accurate measure of any claimed unjust enrichment
by defendants if, in fact, it were found that plaintiff's
termination fell into one of these categories for which severance
benefits are not paid.

time.  See also Church v. Wachovia Securities, Inc., 05cv422-H, 2005 WL 3019239, at *1, 3 (W.D.N.C. Nov. 10, 2005) (plaintiff's state law damages action against former employer was preempted by ERISA as plaintiff expressly sought "severance benefits under the Defendant's policies – an unmistakable reference to payments available, if at all, only under the terms of the Plan – rather than general damages for breach of contract"); Radcliff, 377 F. Supp. 2d at 564-65 (holding that plaintiff's claims for breach of contract in connection with denial of his application for long-term disability benefits, detrimental reliance, and discrimination pursuant to West Virginia Workers' Compensation Act were completely preempted by ERISA as they were "based on rights created by [a] federally-regulated contract," i.e., defendant's "ERISA-governed LTD Plan and Severance Pay Plan"); Strohmeyer v. Metro. Life Ins. Co., 365 F. Supp. 2d 258, 260 (D. Conn. 2005) (Eginton, J.) (holding widow's claim that deceased husband's former employer and its life insurance carrier were negligent in their handling of husband's conversion of benefits was preempted by ERISA, finding "the liability of the defendants is dependent upon the existence of the ERISA plan and the interpretation of rights conferred by it").[4]

---

[4] The cases cited by plaintiff are distinguishable either because they pre-date the Supreme Court's decision in Davila, or because they do not relate to recovery of benefits conferred by ERISA-governed benefit plans, or both.  See Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 5, 12 (1987) (pre-Davila and concerning

Accordingly, plaintiff's quantum meruit claim, Count 6 of her Complaint, falls within the scope of ERISA § 502(a)(1)(B) and is therefore completely preempted by that provision, and plaintiff's Complaint was thus removable to federal court.  <u>See</u> <u>Davila</u>, 542 U.S. at 214.

## IV.  Conclusion

For the foregoing reasons, plaintiff's Motion for Remand [Doc. # 14] is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut this 3rd day of January, 2007.**

---

a Maine statute that did not establish, or require an employer to maintain, an employee benefit plan, but rather required a one-time lump-sum payment to be paid by "any employer that terminates operations at a plant with 100 or more employees, or relocates those operations more than 100 miles away"); <u>Aetna Life Ins. Co.</u> <u>v. Borges</u>, 869 F.2d 142, 146-47 (2d Cir. 1989) (pre-<u>Davila</u> and concerning conflict preemption of a Connecticut state statute, noting the impact of the law on ERISA benefit plans was "too tenuous, remote, and peripheral to require preemption under section 514(a).  The Connecticut law does not focus specifically on ERISA plans or benefits; it applies to lost or abandoned property generally"); <u>Towne v. Nat'l Life of Vt., Inc.</u>, 130 F. Supp. 2d 604, 608 (D. Vt. 2000) (pre-<u>Davila</u> and concerning claims by plaintiffs to recover investment in a benefit plan based on alleged fraud by defendants in inducing plaintiffs to invest, rather than to recovery any benefits due to them under the terms of the plan); <u>Eddlemon v. Stauffer Chem. Co.</u>, B-89-157 (WWE), 1990 WL 138214, at *1, 4-5 (D. Conn. Aug. 21, 1990) (pre-<u>Davila</u>).