```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| Kristine Curcio, | : |
|     Plaintiff, | : |
| | : |
| v. | :   Case No. 3:06cv1630 (JBA) |
| | : |
| Hartford Financial Services Group | : |
| and David Bedard, | : |
|     Defendants. | : |

**RULING ON DEFENDANTS' MOTION TO DISMISS [DOC. # 9]**

Plaintiff Kristine Curcio originally brought this action against her former employer, Hartford Financial Services Group ("Hartford"), and her former supervisor, David Bedard, in Connecticut Superior Court alleging breach of employment contract (Count 1), promissory estoppel (Count 2),[1] negligent misrepresentation (Count 5), and quantum meruit (Count 6) against defendant Hartford, and tortious interference (Count 3) and intentional infliction of emotional distress (Count 4) against defendant Bedard, all arising out of plaintiff's treatment while employed at Hartford and her eventual termination from her position as Vice President of Hartford's Investment Products Division. Compl. [Doc. # 1]. Defendants removed the action to federal court on the basis that plaintiff's Count 6 for quantum

---

[1] Although Count 2 is labeled "Tortious Interference Against Defendant Bedard," plaintiff has clarified that it was "improperly titled" and "actually alleged promissory estoppel" against Hartford, Pl. Opp. [Doc. # 22] at 12-13. See infra Pt. 3.B.

1

meruit is completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 101-1461, and on this basis the Court also denied plaintiff's Motion for Remand. See Ruling on Pl. Mot. for Remand [Doc. # 26].

Prior to the filing of this action in Connecticut Superior Court, plaintiff filed an action in federal court against defendant Hartford also relating to her termination, alleging discriminatory termination on the basis of gender and marital status in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60, et seq. See Curcio v. Hartford Fin. Servs. Group, No. 06cv908 (JBA).

Defendants now move to dismiss plaintiff's Complaint in this action pursuant to the prior pending action doctrine or, alternatively, to dismiss Counts 2-4 for failure to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Def. Mot. [Doc. # 9]. For the reasons that follow, defendants' Motion will be granted in part and denied in part.

## I. Factual Background

The factual allegations of plaintiff's Complaint, which the Court must accept as true at this juncture, reveal the following facts. Plaintiff began working at Hartford in July of 1988 as an actuarial analyst and remained employed there until her

2

termination without notice on December 9, 2004.  Compl. ¶ 4.  At the time of her termination, she was employed as Vice President of the Investment Products Division ("IPD") at Hartford's Life Division in Simsbury, Connecticut.  Id.  Through 2003, plaintiff reported to Mr. David Foy, Hartford Life's Chief Financial Officer.  Id. ¶ 5.  In 2003 when Mr. Foy decided to leave Hartford, Curcio "was very happy in her current position and preferred not to assume Mr. Foy's position" but "[a]t the same time she was very concerned that Mr. Foy's replacement not alter the culture of the working environment, a concern she shared with Mr. Foy and John Walters, Executive Vice President."  Id. ¶ 6.  Before Mr. Foy's departure, he and Mr. Walters "promised her that whoever replaced Mr. Foy would continue to let her run her organization as she had been, and that no changes would be made to the culture of the organization [and] [p]laintiff was also informed that Tom Marra, President of Hartford Life, was in agreement."  Id.  Plaintiff states that had this promise not been made, she would have "as Messers. Foy, Walters and Marra acknowledged, sought employment elsewhere, either in or out of the company."  Id.  Plaintiff also alleges that she "was further promised that her employment could be terminated only for cause" and she "relied on these promises."  Id.

"Upon Mr. Foy's departure [p]laintiff was named Interim Chief Financial Officer of IPD and assumed Mr. Foy's duties in

addition to her own." Id. ¶ 7. She was also responsible for interviewing replacement candidates along with Mr. Walters, but "[u]ltimately, without her endorsement, Mr. Walters named Mr. David Bedard, who had been CFO of the Company's Group Benefits Division, as Chief Financial Officer." Id. Also in 2003, plaintiff was injured in a car accident and separated from her husband, divorcing him in 2004; plaintiff has three children, all younger than teenagers at the time, over whom she has custody. Id. ¶ 8. Plaintiff alleges that she nevertheless "continued to fulfill all of her duties and responsibilities, including those of the position of Interim CFO." Id. Plaintiff assumed "a flexible schedule, working at the office and at home [and] [a]t all times her administrative assistant and the employees working for her were able to locate and contact her." Id. ¶ 9. Plaintiff asserts that "for many years [Hartford] had a policy of allowing employees to work a flexible schedule [and] [t]he employees [p]laintiff supervised all had flexible schedules." Id. However, when Mr. Bedard assumed the position of CFO, he "disapproved" of plaintiff's schedule, "complained that he did not like the fact that she had four telephone numbers where she could be reached [and] [t]he relationship between [them] became strained." id. ¶ 10. Plaintiff talked to Mr. Walters and Mr. Marra about these issues, and Mr. Marra "acknowledged [p]laintiff's dedication of almost seventeen years to the Company

4

and said it was time for The Hartford to give back to her." Id.

"Nevertheless, in late November, 2004, Mr. Bedard told [p]laintiff he could not work with her and told her she should look for another job. On December 7, 2004, [p]laintiff was told she could not enter the building without meeting with Mr. Bedard. On December 9, 2004, [p]laintiff was informed that she no longer had a position with the Company." Id. ¶¶ 11-12. Plaintiff claims that "[s]he was fired, without notice and without cause." Id. ¶ 12.

## II. Prior Pending Action Doctrine

Defendants contend that the Complaint in this action should be dismissed pursuant to the prior pending action doctrine in favor of the earlier action between plaintiff and defendant Hartford concerning her termination filed in this Court, No. 06cv908 (JBA).

The prior pending action doctrine is one of federal judicial efficiency "to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments," see Holliday v. City of Newington, No. 03cv1824 (SRU), 2004 WL 717160, at *1 (D. Conn. Mar. 19, 2004) (internal quotation omitted), and provides that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify

5

giving priority to the second." Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991). "The decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion . . . however, a district court can go beyond the allowable bounds of discretion when it refuses to stay or dismiss a duplicative suit." Id. (internal quotation omitted). "Thus, a court may dismiss an action when a prior pending action has been filed as long as the 'controlling issues in the dismissed action will be determined in the other lawsuit.'" Holliday, 2004 WL 717160, at *1 (citing Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure, § 1360). "When it is possible that, through amendment, each action may contain all of the issues and parties presently contained in either action, the continuation of the first action to be filed is favored." Id. (citing Hammett v. Warner Bros. Pictures, Inc., 176 F.2d 145, 150 (2d Cir. 1949)). "In determining whether a claim is barred by the prior pending action doctrine, the court may rely on a comparison of the pleadings filed in the two actions." Id.

Here, while plaintiff's claims in the first-filed action are distinct from the state common law based claims asserted here, the operative pleadings in each action contain nearly identical factual allegations concerning plaintiff's employment at Hartford, Mr. Foy's departure and the promises allegedly made to her, and her interactions with Mr. Bedard and eventual

6

termination.  Compare No. 06cv903 [Doc. # 25], with No. 06cv1630 [Doc. # 1].  Thus, while the underlying theories of liability and damages may be distinct, a substantial portion of the evidence will necessarily overlap.  Accordingly, while plaintiff's parallel actions do not necessarily implicate the risk of inconsistent judgments that underlies the prior pending action doctrine, compare Odesina v. Saint Francis Hosp., No. 01cv1091 (PCD), 2002 WL 32500865, at *1 (D. Conn. Feb. 26, 2002) (plaintiff's actions involved "the same parties, the same facts and claims alleging race discrimination, gender discrimination and breach of contract"), it would nevertheless conserve the resources of both the Court and the parties to try all of plaintiff's claims in one proceeding.  As all of plaintiff's claims arise out of her treatment and eventual termination, they could all be asserted in the first-filed action, if joinder of defendant Bedard and amendment of her claims were permitted.[2]

Accordingly, the Court will grant defendants' Motion to Dismiss on the basis of the prior pending action doctrine, but will grant plaintiff leave to join defendant Bedard and to amend the operative complaint in the first-filed action to include the

---

[2] As plaintiff notes, she cannot now amend as of right in the first-filed action as defendant Hartford has already responded to the complaint.

claims asserted in this action.[3]

**III. Individual Claims**

Although the Court will dismiss this action on the basis of the prior pending action doctrine, because the Court will permit amendment of plaintiff's Complaint in the 06cv908 action to join defendant Bedard and include the claims asserted in this action is appropriate, it will consider defendants' contentions with respect to the viability of certain of those claims.

    A.   Standard

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Jahgory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329

---

[3] Plaintiff's concern that defendants will oppose amendment and joinder, see Pl. Opp. at 7, is thus moot, and the Court will have jurisdiction over the claims asserted here, when joined in the first-filed action, on the basis of (1) supplemental jurisdiction, and (2) federal question jurisdiction due to the ERISA complete preemption claim with respect to the quantum meruit cause of action. Plaintiff's contention that defendants "may argue a lack of diversity jurisdiction," id., is thus inapposite.

(2d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

B. Count 2

As plaintiff clarified in her opposition memorandum, although Count 2 is titled "tortious interference," it alleges, she claims, promissory estoppel against defendant Hartford.[4] Defendants thus argue in their reply memorandum that this claim must nevertheless be dismissed for failure to allege a sufficiently "clear and definite" promise made by Hartford, as well as failure to properly allege detrimental reliance.

"A claim for promissory estoppel requires '(1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by . . . reason of his [or her] reliance." Dacourt Group, Inc. v. Babcock Indus., Inc., 747 F. Supp. 157, 161 (D. Conn. 1990) (citing R.G. Group, Inc. v. Horn & Hardart Co., 751

---

[4] While defendants appear initially confused in their reply memorandum as to whether the claim is directed against Bedard or Hartford, see Def. Reply [Doc. # 25] at 4, and thus argue that the Complaint fails to allege any promises made by Bedard, it is clear from its allegations that the Count is directed at Hartford, alleging promises it made. See Compl., Count 2 ¶¶ 13-14.

9

F.2d 69, 78 (2d Cir. 1984)); accord Restatement 2d Contracts § 90 ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."); D'Ulisse-Cupo v. Bd. of Directors of Notre Dame High School, 520 A.2d 217, 221 (Conn. 1987) (same).

Plaintiff's promissory estoppel claim alleges that "Hartford's promises to [p]laintiff that her position and the culture of her organization would not change upon the hiring of Mr. Foy's replacement; that the Hartford would take care of her; and that she could be discharged only for cause, were promises that The Hartford should reasonably have expected would induce [p]laintiff to continue in her current position and to forego other opportunities inside and outside of the Company." Compl., Count 2 ¶ 13. While defendants are correct that plaintiff must allege "the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance," i.e., "sufficiently promissory [and] sufficiently definite to support contractual liability," see D'Ulisse-Cupo, 520 A.2d at 222, defendants have not demonstrated that at least one of the alleged promises – that plaintiff would not be terminated without cause – is not definite enough. Although the vague promises alleged, that plaintiff's "position and the culture of her

10

organization would not change" and that Hartford "would take care of her," may be insufficiently definite to support a promissory estoppel claim,[5] the promise that plaintiff would be discharged only for cause is more definite and of a contractual nature.

The Court need not definitively determine that issue, however, because plaintiff's promissory estoppel claim is not viable in any event due to failure to allege sufficient detrimental reliance injury. "[F]orbearance from seeking job opportunities is not sufficient to show detrimental reliance for purposes of promissory estoppel" because it is too speculative to establish detriment. See Martin v. Dupont Flooring Sys., Inc., No. 01cv2189 (SRU), 2004 WL 726903, at *6 (D. Conn. Mar. 31,

---

[5] See D'Ulisse-Cupo, 520 A.2d at 221 (representations that "there would be no problem with [plaintiff] teaching certain courses and levels the following year, that everything looked fine for her rehire for the next year, and that she could continue her planning for the exchange program," that "[a]ll present faculty members [would] be offered contracts for next year," and "that she would have a contract for the following year" were insufficient as they "manifested no present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff [and] none of the presentations contained any of the material terms that would be essential to an employment contract"); accord Redgate v. Fairfield Univ., 862 F. Supp. 724, 730 (D. Conn. 1994) (defendants' "promises [of] employment for 'ten or twenty years' and 'for as long as [plaintiff] want[ed]'" were "insufficiently promissory and insufficiently definite to justify plaintiff's reliance"); Dacourt Group, Inc. v. Babcock Indus., Inc., 747 F. Supp. 157, 161 (D. Conn. 1990) (defendant's "alleged representations to third parties that '[it] had agreed to the Dacourt financing,'" and its "alleged representations to [plaintiff] that it would 'proceed diligently to negotiate all relevant documents' and that '[defendant] would provide a keep-well agreement" were "too vague" and did "not constitute clear and unambiguous promises").

11

2004) (citing, inter alia, D'Ulisse-Cupo, 520 A.2d at 223 & n.5), aff'd 125 Fed. Appx. 369 (2nd Cir. 2005).  Accordingly, as plaintiff alleges no other form of detriment, Count 2 is not viable.

    C.   Count 3

Next, defendants argue for dismissal of Count 3, plaintiff's claim of tortious interference against defendant Bedard, on grounds that the Complaint fails to demonstrate that Bedard was acting with improper motive or means, outside the scope of his authority, for personal gain or animus against the plaintiff, or with knowledge of existence of any contract between plaintiff and Hartford.

"A claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendant['s] knowledge of that relationship, (3) the defendant['s] intent to interfere with the relationship, (4) [that] the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendant['s] tortious conduct."  Appleton v. Bd. of Educ. of Town of Stonington, 757 A.2d 1059, 1063 (Conn. 2000).  However, "not every act that disturbs a contract or business expectancy is actionable. . . . For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious.  This

12

element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . An action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification. . . . In other words, the employee bears the burden of alleging and proving lack of justification on the part of the actor." Daley v. Aetna Life & Cas. Co., 734 A.2d 112, 135 (Conn. 1999) (internal quotations omitted); accord Blake v. Levy, 464 A.2d 52, 55 (Conn. 1983) ("[A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. A claim is made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.") (internal quotations omitted). However, "[a]n agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract. . . . An agent, however, can be held liable for such

interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain."
Murray v. Bridgeport Hosp., 480 A.2d 610, 613 (Conn. Super. Ct. 1984).

Contrary to defendants' contentions, plaintiff properly pleads the elements of her tortious interference claim against defendant Bedard. First, plaintiff has clearly pled "the existence of a contractual or beneficial relationship," inasmuch as she has pled an employment relationship between herself and Hartford. "[T]he law not only does not restrict its protection to rights resting on enforceable contractual relationships, but it also forbids unjustifiable interference with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry." Wellington Systems, Inc. v. Redding Group, Inc., 714 A.2d 21, 30 (Conn. App. Ct. 1998) (citing Goldman v. Feinberg, 37 A.2d 355 (Conn. 1944); Skene v. Carayanis, 131 A. 497 (Conn. 1926)). Additionally, plaintiff has sufficiently pled defendant Bedard's knowledge of her beneficial employment relationship with Hartford.[6] See Rentz v. Cartwright

---

[6] As plaintiff pleads the existence of, and Bedard's knowledge of, her employment relationship with Hartford, the Court need not reach defendants' contentions that plaintiff does not plead facts sufficient to establish Bedard's knowledge of the alleged contract between plaintiff and Hartford not to terminate her without cause. By its allegations, this alleged promise does not appear to be the focus of plaintiff's claim.

14

Ltd. P'Ship, No. CV040072318, 2004 WL 2896607, at *10 (Conn. Super. Ct. Nov. 23, 2004) (noting that where plaintiff alleged a beneficial relationship in the form of her employment with the defendant company, that relationship "had to be known by the third-party corporate agent who fired the plaintiff") (internal citation omitted).

As to the requirement that plaintiff plead that defendant's conduct was tortious, e.g., malicious, and the limitation on claims against agent liability with respect to tortious interference with a contract entered into by the agent's principal, the allegations of Count 3 are sufficient to avoid these pitfalls as well. Plaintiff specifically alleges that "Bedard's conduct was designed to interfere with [her] employment relationship with The Hartford," Compl. ¶ 14, that Bedard acted for personal gain (e.g., "to ensure his own security with the Company," id.), and that "Bedard acted willfully, maliciously, upon improper motive and for his own benefit and/or with an intentional disregard of [p]laintiff's rights," id. Plaintiff also specifically alleges that Bedard engaged in this tortious conduct illegitimately, outside the scope of his employment. Id. Thus, plaintiff has pled all of the necessary elements of tortious interference, and her claim will await further determination of whether she will be able to prove her allegations at the summary judgment stage.

D.   Count 4

As noted above, defendants move to dismiss Count 4 – plaintiff's intentional infliction of emotional distress claim – for failure to allege conduct that rises to the level of "extreme" or "outrageous."  Plaintiff does not oppose defendants' Motion as to this count and agrees to withdraw Count 4, and thus defendants' Motion as to this Count will be granted.

**IV. Conclusion**

For the foregoing reasons, defendants' Motion to Dismiss [Doc. # 9] is GRANTED and the Clerk is directed to CLOSE this case.  An amended scheduling order shall issue in the No. 06cv908 (JBA) action.

                                    IT IS SO ORDERED.

                                    _____/s/_____
                                    Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut this 5th day of February, 2007.**